UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------------------------------------

DARIN POOLE,

Plaintiff,

NOT FOR PUBLICATION

v.

**<u>MEMORANDUM & ORDER</u>**
18-CV-443 (MKB)

DETECTIVE JASON HAWKINS *(Shield #5208, Arresting Officer)*, SERGEANT ALEXANDRU ANGHEL *(Shield #240)*, DETECTIVE KELLY BROWN *(Shield #514, Animal Control)*, DETECTIVE RENE CASTELLANO *(Shield #2601)*, DETECTIVE THOMAS CHIUSANO *(Shield #4479)*, DETECTIVE JAMAR GODDARD *(Shield #692)*, GARRET GORHAM *(Shield #12001 (Retired))*, DETECTIVE DANIEL MOLINSKI *(Shield #205)*, DETECTIVE JORGE MOREL *(Shield #7029)*, OFFICER JAMES SEDER *(Shield #1524)*, and DETECTIVE MICHAEL SEIGER *(Shield #5718)*,

Defendants.

----------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

On July 25, 2018, Plaintiff Darin Poole, proceeding *pro se*, filed an Amended Complaint

against Defendants New York City (the "City"), the New York City Police Department (the

"NYPD"), and three John Doe NYPD officers pursuant to 42 U.S.C. § 1983.  (Am. Compl.,

Docket Entry No. 7.)  Plaintiff alleges that while executing a warrant at his family's home,

Defendants sprayed him with a fire extinguisher causing lasting damage to his vision, arrested,

searched, and ticketed but did not prosecute him, and damaged property belonging to him and to

his family.  (Am. Compl.)  The City subsequently identified Sergeant Alexandru Anghel,

Detectives Kelly Brown, Jason Hawkins, Rene Castellano, Thomas Chiusano, Jamar Goddard,

Daniel Molinski, Jorge Morel, Michael Seiger, and Garret Gorham (retired), as well as Officer

James Seder, as officers who were present during the incident.[1]  (Letter dated Jan. 10, 2019

("Jan. 2019 Letter") 2–3, Docket Entry No. 15.)  The Court liberally construes the Amended

Complaint as alleging (1) federal deprivation of property pursuant to the Due Process Clause,

unlawful search, false arrest, and malicious prosecution by all Defendants, and (2) discrimination

under the Equal Protection Clause, defamation, and excessive force by Detective Brown.  (*Id.* at

2–4; Letter dated Feb. 20, 2019 ("Suppl. Compl.") 3, Docket Entry No. 16.)

Defendants move pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to

dismiss all but the excessive force claim against Detective Brown, and Plaintiff opposed the

motion.[2]  For the reasons set forth below, the Court grants the motion.  Plaintiff's excessive force

claim against Detective Brown shall proceed.

### I.   Background

The Court assumes the truth of the factual allegations in the Amended Complaint for the

purposes of this Memorandum and Order.  The Court also assumes the truth of the allegations in

Plaintiff's Supplemental Complaint, which was filed in response to Defendants' motion for a

more definite statement of Plaintiff's claims, (Suppl. Compl.), and which, in addition to

repeating the allegations in the Amended Complaint, includes the date and address of the arrest

underlying the Amended Complaint, names Detective Brown as the person who assaulted

---

[1]  Defendants contend that "after additional investigation . . . it appears that two other officers possibly could have been equipped with a fire extinguisher" during the search of Plaintiff's home.  (Defs.' Mem. in Supp. of Defs.' Mot. to Dismiss ("Defs.' Mem.") 1 n.1, Docket Entry No. 41.)  However, Defendants do not seek to dismiss Plaintiff's excessive force claim and state that the claim against "the defendant who allegedly used excessive force," whatever his identity, should proceed.  (*Id.* at 2 n.1.)

[2]  (Defs.' Mot. to Dismiss, Docket Entry No. 38; Defs.' Mem.; Defs.' Reply in Supp. of Mot. to Dismiss ("Defs.' Reply"), Docket Entry No. 43; Pl.'s Opp'n to Defs.' Mot. to Dismiss ("Pl.'s Opp'n"), Docket Entry No. 35.)

Plaintiff with a fire extinguisher, and seeks damages for pain and suffering from Detective

Brown and the other Defendants.  (*Id.*; *see* Order dated Nov. 4, 2019 (directing Defendants to

respond to both filings).)

### a.   Factual background

Plaintiff alleges that on November 4, 2017,[3] NYPD officers entered his family's

Brooklyn, New York residence with a search warrant and Detective Brown sprayed him with a

fire extinguisher "from [his] head to the bottom of [his] body," permanently damaging his

eyesight.  (Am. Compl. 1–2, 4.)  Sergeant Anghel handcuffed Plaintiff and an unidentified

officer searched him at the precinct and found nothing.  (*Id.* at 2.)  Defendants gave Plaintiff a

desk appearance ticket with directions to appear in court on December 14, 2016.  (*Id.*)  Plaintiff

appeared in court and learned that his name was not on the docket.  (*Id.*)  When he inquired at the

clerk's office, he "was told by the clerk that the [district attorney] refuse[d] to prosecute [him]."

(*Id.*)  In his opposition to Defendants' motion to dismiss, Plaintiff concedes that he pleaded

guilty, but explains that he did so for reasons other than his guilt.[4]  (Pl.'s Opp'n 5.)

---

[3]  Plaintiff identified the date of the incident as November 4, 2016 in the Amended Complaint, (Am. Compl. 1), but subsequently corrected it to November 4, 2017, (Suppl. Compl. 1 ("I apologize to the [C]ourt for providing the wrong date . . . I know for a fact that the date of occurrence was . . . Nov[ember] 4, 2017.")).

[4]  The Court takes judicial notice of the Certificate of Disposition which specifies that Plaintiff pled guilty.  (Certificate of Disposition, annexed to Decl. of Nicolette Pellegrino ("Pellegrino Decl.") as Ex. B, Docket Entry No. 39-2); *see United States v. Alexander*, 123 F. App'x 444, 445 (2d Cir. 2005) (taking judicial notice of a certificate of disposition showing defendant's conviction because the fact of his conviction was "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned" (quoting Fed. R. Evid. 201(b)(2))); *Wahid v. Mogelnicki*, 406 F. Supp. 3d 247, 248 n.2 (E.D.N.Y. 2017) ("The [c]ourt takes judicial notice of [the plaintiff's] Certificate of Disposition concerning his conviction for murder in the second degree."); *Daniels v. Bonilla*, No. 14-CV-3017, 2015 WL 4894683, at *4 n.8 (E.D.N.Y. Aug. 17, 2015) ("The court may take judicial notice of the Certificate of Disposition for the limited purpose of recognizing that [the] plaintiff's prosecution resulted in [a] conviction.").

Plaintiff contends that Defendants damaged his belongings, including over $200,000 in professional disc jockey equipment and over $150,000 in records and compact discs, and seized $16,000 in cash "earned from doing parties." (Am. Compl. 3.) During the search, they "demolished" his "bedroom set" and broke three doors in his family's home. (*Id.* at 4.)

He alleges that the assault was "an act of discrimination" because he "was the only one [a]ssaulted." (*Id.* at 2.) He further alleges that the search and arrest violated the Fourth Amendment and that his human rights were violated. (*Id.* at 4.) He seeks $50 million in damages. (*Id.*)

### b.  Procedural background

Plaintiff commenced the above-captioned action in the Southern District of New York on December 14, 2017, against City and the New York City Police Department (the "NYPD"), pursuant to 42 U.S.C. § 1983. (Compl., Docket Entry No. 2.) By order dated January 18, 2018, the Southern District of New York transferred the action to the Eastern District of New York. (Transfer Order, Docket Entry No. 3.)

In a June 25, 2018 Memorandum and Order, the Court granted Plaintiff's request to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915, dismissed the Complaint, and granted Plaintiff leave to file an amended complaint. (Mem. & Order dated June 25, 2018, Docket Entry No. 6.) On July 25, 2018, Plaintiff filed the Amended Complaint naming the same defendants and adding three John Doe NYPD officers as defendants. (Am. Compl.) By Memorandum and Order dated October 4, 2018, the Court dismissed the claims against the City and the NYPD, allowed claims against the John Doe officers to proceed, and directed the City to identify the John Doe defendants and provide addresses at which they could be served in accordance with

*Valentin v. Dinkins*, 121 F.3d 72 (2d Cir. 1997) (per curiam).  (Mem. & Order dated June 25, 2018.)

The City identified eleven officers who were present at the search of Plaintiff's home: Sergeant Anghel, Detectives Hawkins, Brown, Castellano, Chiusano, Goddard, Molinski, Morel, and Seiger, Gorham (who is retired, and whose rank at the time was not specified), and Officer Seder.  (Jan. 2019 Letter 2–3.)  The City moved for a more definite statement of Plaintiff's claims pursuant to Rule 12(e) of the Federal Rules of Civil Procedure, (*id.* at 3–4), and the Court directed Plaintiff to respond, (Order dated Jan. 28, 2019).  By Letter dated February 20, 2019, Plaintiff filed a supplemental complaint, providing the address searched and the date of the search.  (Suppl. Compl. 1.)  Plaintiff also added that he was suing Detective Brown for defamation of character.  (*Id.* at 3.)

## II.  Discussion

### a.  Standard of review

In reviewing a motion to dismiss under Rule 12(b)(6), a court must construe the complaint liberally, "accepting all factual allegations in the complaint as true[] and drawing all reasonable inferences in the plaintiff's favor."  *Kim v. Kimm*, 884 F.3d 98, 103 (2d Cir. 2018) (quoting *Chambers v. Time Warner Inc.*, 282 F.3d 147, 152 (2d Cir. 2002)); *see also Tsirelman v. Daines*, 794 F.3d 310, 313 (2d Cir. 2015) (quoting *Jaghory v. N.Y. State Dep't of Educ.*, 131 F.3d 326, 329 (2d Cir. 1997)).  A complaint must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  Although all

allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.

In reviewing a *pro se* complaint, the court must be mindful that a plaintiff's pleadings should be held "to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *see Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (noting that even after *Twombly*, the court "remain[s] obligated to construe a *pro se* complaint liberally").

### b.   Plaintiff fails to state a claim

Defendants move to dismiss Plaintiff's claims of (1) deprivation of property pursuant to the Due Process Clause, unlawful search, false arrest, and malicious prosecution against all Defendants, and (2) discrimination under the Equal Protection Clause and defamation against Detective Brown.  (Defs.' Mem. 1–2.)  The Court addresses each claim below.

### i.   Deprivation of property claim against all Defendants

Defendants argue that Plaintiff's deprivation of property claim fails because (1) Plaintiff has no property interest in the residence that was searched and therefore lacks standing and (2) New York provides a meaningful post-deprivation remedy for the alleged random and unauthorized deprivation of property in the New York Court of Claims.  (Defs.' Mem. 7–10.) Defendants also argue that Plaintiff's claim should be dismissed because Plaintiff's opposition to the motion to dismiss describes the items that were allegedly destroyed but fails to address Defendants' legal arguments.  (Defs.' Reply 3.)

Plaintiff argues that Defendants broke down doors in the house "for no reason" and that they "smashed and destroyed" his collection of music dating from 1986 to 2017 and over

$250,000 worth of disc jockey equipment, including speakers worth $50,000.[5]  (Pl.'s Opp'n 1–2.)

"The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property without due process of law, and 'those who seek to invoke its procedural protection must establish that one of these interests is at stake.'"  *Victory v. Pataki*, 814 F.3d 47, 59 (2d Cir. 2016) (quoting *Graziano v. Pataki*, 689 F.3d 110, 114 (2d Cir. 2012)). A court first determines "whether there exists a liberty or property interest of which a person has been deprived," and if so, "whether the procedures followed by the State were constitutionally sufficient."  *Id.* (quoting *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011)).  "[I]n evaluating what process satisfies the Due Process Clause, 'the Supreme Court has distinguished between (a) claims based on established state procedures and (b) claims based on random, unauthorized acts by state employees.'"  *Rivera-Powell v. N.Y.C. Bd. of Elections*, 470 F.3d 458, 465 (2d Cir. 2006) (quoting *Hellenic Am. Neighborhood Action Comm. v. City of New York*, 101 F.3d 877, 880 (2d Cir. 1996)).  "When the state conduct in question is random and unauthorized, the state satisfies procedural due process requirements so long as it provides [a] meaningful post-deprivation remedy."  *Id.* (first citing *Hellenic Am. Neighborhood Action Comm.*, 101 F.3d at 880; and then citing *Hudson v. Palmer*, 468 U.S. 517, 533 (1984) ("[A]n unauthorized

---

[5] After Defendants filed their reply brief, Plaintiff filed an additional letter opposing the motion to dismiss.  (Pl.'s Suppl. Opp'n to Defs.' Mot. to Dismiss ("Pl.'s Suppl. Opp'n"), Docket Entry No. 46.)  In the letter, Plaintiff restates the facts and arguments set forth in his earlier opposition, describes his reasons for pleading guilty, and explains how he was singled out to be sprayed with a fire extinguisher and led out of the house to a police van while covered in white foam, causing him to be humiliated.  (*Compare id.*, *with* Pl.'s Opp'n.)  Plaintiff also describes the damage to his personal property in more detail, including damage to "more than a million dollars worth of classic disco vinyl records and a collection of [compact disc] classics that may never be replaced."  (Pl.'s Suppl. Opp'n 3.)  Defendants request that the Court disregard the supplemental opposition as untimely and duplicative.  (Letter dated Apr. 28, 2020, Docket Entry No. 47.)  The Court finds that Plaintiff makes no new legal arguments in the filing.

intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available.")).

Plaintiff fails to state a claim because he does not allege facts suggesting that the alleged deprivation of his property occurred pursuant to an established state procedure, and because the state provided him with a meaningful post-deprivation remedy, even though he did not use it. New York provides Plaintiff with at least one meaningful post-deprivation remedy — bringing a suit in the Court of Claims — and he does not allege that he sought to bring, or was prevented from bringing, a state law cause of action seeking compensation for the loss of his property. *See Harris v. City of New York*, No. 16-CV-1214, 2018 WL 4471631, at *10 (E.D.N.Y. Sept. 18, 2018) (holding that the plaintiff could not bring a section 1983 deprivation of property claim for property that was vouchered after her arrest and then not returned because the plaintiff could have brought a "state law claim in the Court of Claims" "to retrieve her [tele]phone and rewards card — or to receive monetary compensation in the event they were lost" (citing *Wahid v. Mogelnicki*, No. 15-CV-2869, 2017 WL 2198960, at *2 (E.D.N.Y. May 17, 2017))); *Wahid*, 2017 WL 2198960, at *2 ("New York has adequate state post-deprivation remedies" that allow "a plaintiff [to] bring a state law claim for negligence, replevin or conversion with the Court of Claims" (citing *Love v. Coughlin*, 714 F.2d 207, 208–09 (2d Cir. 1983))); *Omor v. City of New York*, 13-CV-2439, 2015 WL 857587, at *8 (S.D.N.Y. Feb. 27, 2015) (finding that deprivation of personal property claims are "barred where the state provides a meaningful postdeprivation remedy under state law" (citing *Hudson*, 468 U.S. at 533)); *Alloul v. City of New York*, No. 09-CV-7726, 2010 WL 5297215, at *6 (S.D.N.Y. Dec. 21, 2010) (holding that the seizure and

destruction of the plaintiff's car was a random and unauthorized act and dismissing his deprivation of property interest claim because a state court remedy was available).

Accordingly, the Court grants Defendants' motion and dismisses Plaintiff's destruction of property claim.[6]

### ii.   Unlawful search claim against all Defendants

Defendants argue that Plaintiff's unlawful search claim fails because (1) he does not reside at the property searched and therefore he did not have a reasonable expectation of privacy and (2) the search was lawfully conducted pursuant to a warrant.[7]  (Defs.' Mem. 12–14; Defs.' Reply 5–6.)

Plaintiff contends that "maybe [Defendants] were given some false information to keep coming to our house with search warrants[,] destroying property[,] and finding nothing," and that "maybe [they] had probable cause for that."  (Pl.'s Opp'n 4.)

The Fourth Amendment protects individuals "against unreasonable searches and seizures."  U.S. Const. amend. IV; *see also United States v. Bailey*, 743 F.3d 322, 331 (2d Cir. 2014).  "Normally, the issuance of a warrant by a neutral magistrate, which depends on a finding of probable cause, creates a presumption that it was objectively reasonable for the officers to believe that there was probable cause . . . ."  *Golino v. City of New Haven*, 950 F.2d 864, 870 (2d Cir. 1991) (*citing United States v. Ventresca*, 380 U.S. 102, 109 (1965)); *see also Southerland v.*

---

[6]  Because Plaintiff failed to pursue an available state remedy for the deprivation of his property and therefore fails to state a claim, the Court does not address whether he has standing to sue.

[7]  Plaintiff was arrested on November 4, 2017 inside 413 Miller Avenue, Brooklyn, New York, where the search was conducted, but gave a different home address in Roosevelt, New York.  (November 4, 2017 Arrest Report, annexed to Pellegrino Decl. as Ex. A, Docket Entry No. 39-1; Suppl. Compl. 1.)

*City of New York*, 680 F.3d 127, 146 (2d Cir. 2012) ("'[T]he issuance of a search warrant . . .

creates a presumption that it was objectively reasonable for the [defendant] to believe that the

search was supported by probable cause' so as to render the defendant qualifiedly immune from

liability." (second and third alterations in original) (quoting *Martinez v. City of Schnectady*, 115

F.3d 111, 115 (2d Cir. 1997))).

 Plaintiff concedes that Defendants had a warrant to search the house and does not

contend that the warrant was issued without probable cause or that Defendants' reliance on the

information they used to obtain the warrant was objectively unjustified.  *See United States v.*

*Leon*, 468 U.S. 897, 926 (1984) (holding "suppression [of evidence found with a warrant] is

appropriate only if the officers were dishonest or reckless in preparing their affidavit or could not

have harbored an objectively reasonable belief in the existence of probable cause").  Instead,

Plaintiff argues that Defendants may have been misled by unnamed persons into believing that a

warrant was justified.  (Pl.'s Opp'n 4.)  Because Defendants searched the house with a warrant

that Plaintiff does not challenge, Plaintiff cannot state a Fourth Amendment claim.  *See Griffin-*

*Robinson v. Warhit*, No. 20-CV-2712, 2020 WL 2306478, at *4 (S.D.N.Y. May 6, 2020)

(holding that the plaintiff failed to state a Fourth Amendment claim where her home was

searched pursuant to a warrant and she "[did] not allege any facts that would undermine the

presumed validity of the warrant, such as any facts suggesting that the police officers obtained it

through false statements or other misrepresentations"); *Gonzalez v. Yepes*, No. 19-CV-267, 2019

WL 2603533, at *6 (D. Conn. June 25, 2019) ("Probable cause for the searches is presumed

because the [d]efendants conducted the searches pursuant to a warrant . . . [and the p]laintiff is

unable to overcome this presumption because there are no allegations that any [d]efendant

intentionally or recklessly made material false statements or omissions in the warrant

affidavits.”); *Reynolds v. McCoon*, No. 14-CV-255, 2016 WL 7229131, at *3 (W.D.N.Y. Dec. 14, 2016) (“[B]ecause a valid warrant existed, and because [the plaintiff] does not allege that the warrant was want of probable cause, [the plaintiff] fails to state a Fourth Amendment claim.”).

The Court grants Defendants’ motion and dismisses Plaintiff’s Fourth Amendment claim.

### iii.   False arrest claim against all Defendants

Defendant argues that Plaintiff’s false arrest claim fails because he pled guilty, which was conclusive evidence of probable cause to arrest him, and probable cause is a complete defense to a false arrest claim.  (Defs.’ Mem. 14–15; Defs.’ Reply 6.)  In support, Defendants argue that although Plaintiff “asserts that even though he pled guilty, he was not guilty,” he does not dispute the validity of his plea, which bars his false arrest claim.[8]  (Defs.’ Reply 6 n.7.)

Plaintiff argues that he was falsely arrested because “[he] had no weapons, drugs[,] or anything else illegal on [him].”  (Pl.’s Opp’n 4.)  Plaintiff admits[9] that he pled guilty “to disorderly conduct,” but argues that it “is a violation [and] not a crime,” and he only pled guilty, “not because [he] was guilty of anything,” but because his attorney told him that if he pled guilty, he would no longer be required to commute from Connecticut for court appearances, and there would be no record of his plea if he “had no trouble with the law.”  (*Id.* at 5–6.)

“[A] conviction of the plaintiff following the arrest is viewed as establishing the existence of probable cause” sufficient to preclude a false arrest claim.  *Cameron v. Fogarty*, 806 F.2d 380, 387 (2d Cir. 1986) (citing *Broughton v. State*, 37 N.Y.2d 451, 458 (1975)); *see also*

---

[8]  During his plea hearing in state court, Plaintiff stated that he was pleading guilty voluntarily.  (Tr. dated Feb. 28, 2018, annexed to Suppl. Decl. of Nicole Pellegrino as Ex. C, Docket Entry No. 42-1.)

[9]  Plaintiff makes this admission while addressing his malicious prosecution claim.  (Pl.’s Opp’n 4–5.)

*Corsini v. Brodsky*, 731 F. App'x 15, 18 (2d Cir. 2018) (holding that the plaintiff's "conviction of one charge stemming from [the incident that led to his arrest] necessarily establishes probable cause for both that arrest and the ensuing prosecution" (first citing *Cameron*, 806 F.2d at 388–89; and then citing *Mitchell v. City of New York*, 841 F.3d 72, 79 (2d Cir. 2016))).  This is true even where the conviction arises from a guilty plea.  *See McNeill v. People of City & State*, No. 06-CV-4843, 2006 WL 3050867, at *3 (E.D.N.Y. Oct. 24, 2006) ("'Since a guilty plea is the equivalent of a conviction,' [the plaintiff's] claims under [section] 1983 must fail." (first quoting *Hernandez v. City of New York,* 2004 WL 2624675, at *5 (S.D.N.Y. Nov. 18, 2004); and then citing *Spies v. Brown,* 2002 WL 441991, at *2 (E.D.N.Y. Mar. 13, 2002))), *aff'd sub nom. McNeill v. People of City & State of New York*, 242 F. App'x 777 (2d Cir. 2007); *see also Maietta v. Artuz*, 84 F.3d 100, 103 n.1 (2d Cir. 1996) ("[C]ommon law principles preclude a challenge to the validity of an arrest after a guilty plea, for purposes of a civil suit under 42 U.S.C. § 1983." (first citing *Cameron*, 806 F.2d at 386–89; and then citing *Tavarez v. Reno*, 54 F.3d 109, 110 (2d Cir. 1995))).  "[A] guilty plea, even if to a lesser included offense under a charged violation, is fatal to a false arrest claim."  *Tretola v. County of Nassau*, 14 F. Supp. 3d 58, 68–69 (E.D.N.Y. 2014); *Papeskov v. Brown*, No. 97-CV-5351, 1998 WL 299892, at *5 (S.D.N.Y. June 8, 1998) ("[A] plea of guilty, even to a charge lesser than that for which the plaintiff was arrested, bars a [section] 1983 action.") (collecting cases), *aff'd*, 173 F.3d 845 (2d Cir. 1999).  "Courts in this circuit have routinely dismissed false arrest claims where the plaintiff pleaded guilty to the offense leading to his arrest," and even "where a plaintiff pleaded guilty to a lesser charge."  *Gill v. Dawkins*, No. 16-CV-1398, 2020 WL 7042647, at *4 (E.D.N.Y. Nov. 30, 2020) (collecting cases).

Regardless of Plaintiff's motivation, he admits to pleading guilty, (Pl.'s Opp'n 5–6), and does not contend that his guilty plea was anything other than knowing, voluntary, and intelligent. Therefore, his false arrest claim fails. *See Tretola*, 14 F. Supp. 3d at 68–69.

The Court grants Defendants' motion and dismisses Plaintiff's false arrest claim.

### iv.   Malicious prosecution claim against all Defendants

Defendant argues that Plaintiff's malicious prosecution claim fails because (1) Plaintiff has not alleged that there was no probable cause to prosecute him (instead, merely alleging that an officer searched him and found nothing), (2) the criminal charges against him were not terminated in his favor, a necessary element of a malicious prosecution claim, and (3) he has not pled that any Defendant acted with malice, such as by alleging that they acted with "totally lacking" probable cause or "a wrong or improper motive" (another necessary element).  (Defs.' Mem. 16–19 (quoting *Wilson v. McMullen*, No. 07-CV-948, 2010 WL 1268055, at *6 (E.D.N.Y. Mar. 30, 2010)); Defs.' Reply 6–8.)

As discussed above, Plaintiff admits that he pleaded guilty, but for reasons other than his guilt.  (Pl.'s Opp'n 5–6.)

The Second Circuit has clarified that "federal law defines the elements of a [section] 1983 malicious prosecution claim, and that a [s]tate's tort law serves only as a source of persuasive authority rather than binding precedent in defining these elements."  *Lanning v. City of Glens Falls*, 908 F.3d 19, 25 (2d Cir. 2018).  To prevail on a section 1983 claim for malicious prosecution, a plaintiff is "required to show 'a seizure or other perversion of proper legal procedures implicating [his] personal liberty and privacy interests under the Fourth Amendment,'" *id.* at 24 (alteration in original) (quoting *Washington v. County of Rockland*, 373 F.3d 310, 316 (2d Cir. 2004)), and "that criminal proceedings were initiated or continued against

13

him, with malice and without probable cause, and were terminated in his favor," *id.* (first citing *Mitchell v. City of New York*, 841 F.3d 72, 79 (2d Cir. 2016); and then citing *Swartz v. Insogna*, 704 F.3d 105, 111–12 (2d Cir. 2013)).  Under section 1983, a plaintiff is required to show an "affirmative indication[] of innocence to establish 'favorable termination.'"  *Id.* at 25 (explaining that regardless of changes in New York law, "federal law defines the elements of a [section] 1983 malicious prosecution claim, . . . [and the Second Circuit's] prior decisions requiring affirmative indications of innocence to establish 'favorable termination' . . . continue to govern [section] 1983 malicious prosecution claims").  "When a person has been arrested and indicted, absent an affirmative indication that the person is innocent of the offense charged, the government's failure to proceed does not necessarily 'impl[y] a lack of reasonable grounds for the prosecution.'"  *Id.* at 28 (alteration in original) (quoting *Conway v. Village of Mount Kisco*, 750 F.2d 205, 215 (2d Cir. 1984)); *see also id.* (explaining that where the plaintiff alleged that charges against him were dismissed for unspecified reasons after a jury trial, he had not adequately pleaded favorable termination).  "[W]here a dismissal in the interest of justice 'leaves the question of guilt or innocence unanswered[,] . . . it cannot provide the favorable termination required as the basis for [that] claim.'"  *Id.* at 28–29 (second, third, and fourth alterations in original) (quoting *Hygh v. Jacobs*, 961 F.2d 359, 367–68 (2d Cir. 1992)).

Because Plaintiff pleaded guilty and does not dispute the validity of his plea, he fails to allege that the underlying criminal proceeding terminated in his favor.  *See Black v. Petitinato*, 761 F. App'x 18, 23 (2d Cir. 2019) ("[The plaintiff] pleaded guilty to a different parole violation as a part of a plea agreement and the other violation charges were dismissed.  Because the dismissals were a result of [the plaintiff's] plea agreement, they were . . . not favorable terminations." (citing *Posr v. Court Officer Shield No. 207*, 180 F.3d 409, 418 (2d Cir. 1999)));

*Castang v. Geimano*, No. 19-CV-7178, 2020 WL 5531553, at *5 (E.D.N.Y. Sept. 15, 2020) ("Even if [the court] were to grant plaintiff leave to amend the complaint, his guilty plea establishes probable cause and precludes a claim for false arrest and malicious prosecution under [section] 1983." (first citing *Magnotta v. Putnam Cnty. Sheriff*, No. 13-CV-2752, 2014 WL 705281, at *5 (S.D.N.Y. Feb. 24, 2014); and then citing *Houston v. City of New York*, No. 06-CV-2094, 2013 WL 1310554, at *4 (E.D.N.Y. March 28, 2013))).  Therefore, Plaintiff cannot show a favorable termination and thus cannot state a malicious prosecution claim.

The Court grants Defendants' motion and dismisses Plaintiff's malicious prosecution claim.

### v.    Discrimination claim against Detective Brown

Defendants argue that Plaintiff has not stated a discrimination claim because while he alleges that he was sprayed with a fire extinguisher, he "does not allege that other individuals were similarly situated or that any purported selective treatment was due to 'impermissible considerations.'"  (Defs.' Mem. 10–11 (quoting *Freedom Holdings, Inc. v. Spitzer*, 357 F.3d 205, 234 (2d Cir. 2004)); Defs.' Reply 4.)

Plaintiff argues that he was "singled out" for assault because "out of all the other defendants [prosecuted after the November 4, 2017 incident] [he] was the only one sprayed with the fire [extinguisher]."  (Pl.'s Opp'n 3.)

"The Fourteenth Amendment to the United States Constitution declares that '[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws.'"  *Brown v. City of Oneonta*, 221 F.3d 329, 336–37 (2d Cir. 2000) (alteration in original) (quoting U.S. Const. amend. XIV, § 1).  The Equal Protection Clause prohibits government officials from intentionally discriminating against individuals based on their race, ethnicity, gender or national

origin. *See Ross v. New Canaan Env't Comm'n*, 532 F. App'x 12, 13 (2d Cir. 2013) ("To state a

claim for an equal protection violation, appellants must allege that a government actor

intentionally discriminated against them on the basis of race, national origin or gender." (quoting

*Hayden v. County of Nassau*, 180 F.3d 42, 48 (2d Cir. 1999))); *Hayden v. Paterson*, 594 F.3d

150, 162 (2d Cir. 2010) ("The central purpose of the Equal Protection Clause of the Fourteenth

Amendment is the prevention of official conduct discriminating on the basis of race." (quoting

*Washington v. Davis*, 426 U.S. 229, 239 (1976)).

To state a claim for equal protection, a plaintiff can proceed on both a selective

enforcement and a class-of-one theory. *See Jordan v. N.Y.C. Bd. of Elections*, 816 F. App'x 599,

603–04 (2d Cir. 2020).  Where a plaintiff is treated unequally compared with others similarly

situated, and when such treatment is based on "impermissible considerations such as race,

religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith

intent to injure a person," the facts give rise to a claim of selective enforcement.[10]  *LaTrieste*

*Rest. & Cabaret Inc. v. Village of Port Chester*, 40 F.3d 587, 590 (2d Cir. 1994) (quoting

---

[10]  In addition to selective enforcement and class-of-one claims, "[t]here are several ways for a plaintiff to plead intentional discrimination that violates the Equal Protection Clause." *Brown v. City of Oneonta*, 221 F.3d 329, 337 (2d Cir. 2000).  To sustain an equal protection claim, a plaintiff may also rely on (1) a law that makes classifications specifically based on a protected class, including race, (2) a facially neutral law or policy that has been applied in a discriminatory manner, or (3) a facially neutral policy that has an adverse effect and was motivated by discriminatory animus.  *See Pyke ex rel. Estate of Pyke v. Cuomo*, 258 F.3d 107, 110 (2d Cir. 2001).  Because Plaintiff does not allege that he is a member of a protected class, that "a facially neutral law or policy . . . .[was] applied in an unlawfully discriminatory manner," or that he was affected by "a facially neutral policy that has an adverse effect and was motivated by discriminatory animus," *id.*, the Court analyzes Plaintiff's equal protection claims based on selective enforcement and a class-of-one theory. *See Patterson v. City of New York*, No. 16-CV-3525, 2017 WL 3432718, at *9 (E.D.N.Y. Aug. 9, 2017) (differentiating between selective prosecution claims and claims implicating "the more general framework for 'discriminatory application of the law'" (quoting *Pyke v. Cuomo*, 258 F.3d 107, 109 (2d Cir. 2001))), *aff'd*, 758 F. App'x 217 (2d Cir. 2019).

*LeClair v. Saunders*, 627 F.2d 606, 608 (2d Cir. 1980)); *see also Bush v. City of Utica*, 558 F. App'x 131, 134 (2d Cir. 2014) (holding that plaintiffs stated an equal protection claim when they alleged that the fire department had a policy of not entering low-income properties).  Similarly, equal protection claims based on a so-called "class of one" theory involve claims "where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."  *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam) (first citing *Sioux City Bridge Co. v. Dakota County*, 260 U.S. 441 (1923); and then citing *Allegheny Pittsburgh Coal Co. v. Comm'n of Webster Cnty.*, 488 U.S. 336 (1989)).  A plaintiff asserting a selective enforcement or class-of-one claim must present evidence of similarly situated comparators.  *Church of Am. Knights of the Ku Klux Klan v. Kerik*, 356 F.3d 197, 210 (2d Cir. 2004) ("A selective enforcement claim requires, as a threshold matter, a showing that the plaintiff was treated differently compared to others similarly situated." (citing *Giordano v. City of New York*, 274 F.3d 740, 750–51 (2d Cir. 2001))); *see also King v. N.Y. State Div. of Parole*, 260 F. App'x 375, 380 (2d Cir. 2008) (affirming dismissal of class of one claim because the plaintiff "failed to identify a single individual with whom he can be compared for [e]qual [p]rotection purposes"); *Hunter v. City of New York*, 35 F. Supp. 3d 310, 328 (E.D.N.Y. 2014) (holding that the plaintiff's allegations were insufficient to state a selective enforcement or class-of-one claim based on his arrest because he had not pled facts showing the defendants treated him differently based on impermissible considerations or that the proposed comparator, who was not arrested, was similarly situated).

The Amended Complaint includes insufficient factual allegations to state an equal protection claim under either a selective enforcement or a class-of-one theory.  Construed liberally, Plaintiff alleges that other people who were in the same house during his arrest, and

who were not sprayed with a fire extinguisher, were similarly situated to him and were treated differently for no good reason.  (Am. Compl. 2.)  However, Plaintiff does not include any factual allegations suggesting that his differential treatment by Defendants was the result of "impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure" him, as required to establish a selective enforcement claim.  *See Bush*, 558 F. App'x at 134 (quoting *LeClair v. Saunders*, 627 F.2d 606, 609–10 (2d Cir. 1980)).  Nor does the Complaint include factual allegations suggesting that the other people in the house with Plaintiff at the time of his arrest were "similarly situated" to him, as required to establish a class-of-one claim.  *See Ruston v. Town Bd. for Town of Skaneateles*, 610 F.3d 55, 59 (2d Cir. 2010).  Accordingly, Plaintiff fails to plead facts that support the legal conclusion that Defendants' treatment of him violated the Equal Protection Clause.

The Court grants Defendants' motion and dismisses Plaintiff's equal protection claim, but grants Plaintiff thirty days to amend the Complaint to provide factual allegations that would sufficiently state an equal protection claim.

### vi.   Defamation claim against Detective Brown

Defendants argue that Plaintiff cannot proceed with his defamation claim, because he failed to file a notice of claim against the City as required by the New York General Municipal Law before bringing a tort claim against the City or its employee.[11]  (Defs.' Mem. 11–12; Defs.' Reply 4–5.)  In support, Defendants argue that Plaintiff did not plead that he filed a Notice of

---

[11]   Defendants also argue that Plaintiff cannot proceed with any other state-law claims for this reason.  (Defs.' Mem. 11–12.)  The Court does not construe Plaintiff as bringing any additional state law claims.  (*See generally* Am. Compl; Suppl. Compl.)

18

Claim, and "upon information and belief," he has not filed one.  (Defs.' Mem. 12; Defs.' Reply 5.)

Plaintiff does not allege or argue that he filed a notice of claim.  Instead, he argues that he "was taunted by" Detective Brown and the other officers "in the form of name calling."  (Pl.'s Opp'n 3.)  Plaintiff recounts that Detective Brown called him "the real white coke man" in front of his neighbors and friends, and he emerged from his house covered in white foam from the fire extinguisher.  (*Id.* at 4.)

Section 50-e of the New York General Municipal Law provides that to proceed on a state tort action "against [a] New York municipal entit[y] or their employees acting within the scope of their employment," a notice of claim must be filed "within ninety days of the incident giving rise to the claim."  *Grantley v. City of New York*, No. 12-CV-8294, 2013 WL 6139688, at *3 (S.D.N.Y. Nov. 21, 2013) (citing N.Y. Gen. Mun. Law §§ 50-e, 50-i); *see also* N.Y. Gen. Mun. Law §§ 50-e(2)–(3) (discussing the required contents of the notice of claim and the procedure for serving the notice of claim upon an officer, appointee or employee of a public corporation); *Allen v. Antal*, 665 F. App'x 9, 14 (2d Cir. 2016) (dismissing a case for failure to file a timely notice of claim pursuant to section 50-e); *Hardy v. N.Y.C. Health & Hosps. Corp.*, 164 F.3d 789, 795 (2d Cir. 1999) (same).  Defamation is an action brought under New York tort law.  *See Tannerite Sports, LLC v. NBCUniversal News Grp.*, 864 F.3d 236, 244–45 (2d Cir. 2017) (noting that defamation is a tort in New York and setting forth its elements); *Sadallah v. City of Utica*, 383 F.3d 34, 38 (2d Cir. 2004) ("Defamation . . . is an issue of state law, not of federal constitutional law . . . ." (citing *Lauro v. Charles*, 219 F.3d 202, 207 (2d Cir. 2000))).  Indeed, district courts in this circuit have routinely applied the notice-of-claim requirement to defamation claims.  *See Domni v. County of Nassau*, No. 19-CV-83, 2020 WL 7625417, at *6 (E.D.N.Y. Dec. 21, 2020)

(denying leave to amend the complaint to add a defamation claim because the plaintiff's notice of claim "d[id] not sufficiently set forth the nature of his [proposed] defamation claim nor make any reference to such a claim" and the court did not have jurisdiction to allow him to file an amended or late notice of claim); *Greenland v. Municipality of Westchester Cnty.*, No. 18-CV-3157, 2020 WL 4505507, at *6 (S.D.N.Y. Aug. 4, 2020) ("To the extent [the p]laintiff seeks to bring a state law claim for defamation against [d]efendants, it is dismissed because [the p]laintiff has failed to affirmatively plead that he filed a notice of claim . . . ."); *Marom v. Town of Greenburgh*, No. 18-CV-7637, 2020 WL 978514, at *5 (S.D.N.Y. Feb. 28, 2020) (collecting cases and stating that "[c]ontrary to [the plaintiff's] assertion, defamation claims are not exempt from the notice of claim requirement, and courts routinely dismiss claims where plaintiff failed to comply with this condition precedent").

Because Plaintiff is attempting to sue NYPD officers, who are City employees, for the state-law tort of defamation, Plaintiff was required to file a notice of claim. *See Best v. Town of Clarkstown*, 61 F. App'x 760, 763 (2d Cir. 2003) ("New York law requires a plaintiff to file [a notice of claim] before suing a police officer."); *Johnson v. City of New York*, No. 15-CV-6915, 2019 WL 294796, at *13 (S.D.N.Y. Jan. 23, 2019) (analyzing a plaintiff's compliance with the notice-of-claim requirement in bringing claims against NYPD officers); *Ruiz v. Herrera*, 745 F. Supp. 940, 944 (S.D.N.Y. 1990) ("[T]he filing of a notice of claim is a prerequisite to filing a civil action in tort against an on-duty police officer.").  Plaintiff does not allege that he filed a notice of claim with the City, much less that he did so within ninety days of his arrest on November 4, 2017, the event that gave rise to his claim.  Nor does he respond to Defendants' argument that he failed to file a notice of claim.

Accordingly, the Court grants Defendants' motion and dismisses Plaintiff's defamation claim, but grants Plaintiff thirty days to amend the Complaint to allege that he filed a timely notice of claim, if he in fact did so.

### vii.  Leave to amend

The Court grants Plaintiff leave to amend the Amended Complaint as to Plaintiff's equal protection claim.  If Plaintiff filed a timely notice of claim with the City, he may also amend the Amended Complaint as to his defamation claim.  Plaintiff shall file a second amended complaint, if any, within thirty days of the date of this Memorandum and Order.  If Plaintiff files a second amended complaint within thirty days, the second amended complaint will completely replace the Amended Complaint.  The second amended complaint must stand on its own without reference to the Amended Complaint and must contain claims pertaining to Plaintiff's excessive force claim against Detective Brown as well as any amended claims.  If Plaintiff elects to file a second amended complaint, it must be captioned "Second Amended Complaint" and bear the same docket number as this Memorandum and Order.[12]

## III.  Conclusion

For the foregoing reasons, the Court grants Defendants' motion and dismisses Plaintiff's deprivation of property, unlawful search, false arrest, malicious prosecution, discrimination, and defamation claims.[13]  The Court grants Plaintiff thirty days from the date of this Memorandum and Order to amend the Amended Complaint as to his equal protection and defamation claims. If a second amended complaint is not filed within the time specified, the Court will dismiss these

---

[12]  Plaintiff's request for a settlement conference "for the . . . damage to [his] eye and [his] personal property," (Pl.'s Suppl. Opp'n 3), is denied as premature.

[13]  Because Defendants did not move to dismiss Plaintiff's excessive force claim, that claim will proceed against Detective Brown.

claims.  The Clerk of Court is directed to mail a copy of this Memorandum and Order to Plaintiff

at his address of record.

Dated: February 22, 2021
       Brooklyn, New York

                                    SO ORDERED:


                                    _____s/ MKB_____
                                    MARGO K. BRODIE
                                    United States District Judge